you. I mean we're going on. Good morning. This is Montgomery. Make your Sea. Good morning, your honors. Also, may it please the court. I'm Jamie Montgomery, assistant appellate defender with the office of the state appellate defender. I represent the appellant, Mr. Daniel Clark. This case involves two issues. The second issue has been conceded by the state. That's the one about fines and fees. They're probably focusing my comments today on the first issue. The first issue boils down quite simply to the state got it right in the trial court. When Mr. Clark's attorneys filed a motion to withdraw the guilty plea, which implicitly raised the attorney's own ineffectiveness, the state responded by filing a motion to disqualify defense counsel on the basis of the conflict of interest. That motion created the prosecutors below recognize that there was no way to get to the issues in the motion to vacate the plea without getting into matters that occur off the record, specifically conversations between the attorneys during the plea negotiations and also conversations between Mr. Clark and his attorney, his attorneys. What does the record reflect relative to establishing the allegations the state made the allegations that they would have to get into those things? Well, there was a motion to disqualify the motion contained allegations, but it contained allegations that this, that the, that the motion raised the issue of counsel's own ineffectiveness and that counsel should not be permitted to argue alleged that defendants counsel it did allege that the attorneys had a conflict of interest and how or when were those allegations established as a matter of fact? Um, well, the hearing that occurred on the motion to vacate was cursory at best. There was no comments from either side. Um, I'm sorry, did you say perjury at best? Cursory? Oh, cursory. That would be a different story. Entirely. So there's the motion to vacate the plea, which was supported by affidavits filed by defense counsel in the motion. Paragraph eight, the attorneys stated in the motion to vacate the plea that at time, Mr. Um, Clark was entering into the plea, um, before the court, he had not been apprised of the sentencing cap. Um, which in order for Mr. Clark to not be apprised of the cap, either counsel did not convey the state's offer to him, or, um, they did not discuss the ramifications of what a sentencing cap would mean. Well, isn't it on the record that the trial court judge admonished him concerning the cap at the time of the plea? I think specifically the prosecutor said, oh, by the way, judge, we have this cap here and the judge went over it with the defendant and the defendant said he understood, correct? That is what the record shows. However, that doesn't end the inquiry in this case. Um, what happens thereafter is, um, he enters the plea. He says, yes, we don't know because there wasn't a hearing on this to talk about the things that aren't reflected in the transcript, we don't know whether counsel was nodding at him, you know, isn't this a good, aren't these good issues for a post-conviction petition? Well, these would be okay issues for a post-conviction petition. I mean, they would be reasonable to what was happening off the, off the record. Correct. But this is also very similar to crankle issues where, you know, there's no doubt who raised, who raised the issue of ineffective assistance, defense counsel, defense counsel, alleged their own ineffectiveness in the motion to vacate the plate. Didn't the state make a motion? The state also raised, the state argued that in order to get into the issues that were raised, we would have to get into ineffective assistance of counsel, which would, which created a conflict of interest. So both the state and defense counsel have alleged ineffective assistance and have asserted that we're going to, or, you know, made the court aware that this would require getting into that information and then the court did not act on that, the court denied the motion to disqualify without comment or argument from either side. And then it went on to deny the motion to vacate the plea on the grounds that were asserted in the motion with, and I believe the court's comments, sorry, I don't have them up the top of my head, the court's comments were along the lines of what it saw in court before that it had admonished the defendant. So what happened before and on the record was sufficient, but the issue was not what happened before the court on the record. The issue was what did the attorneys tell Mr. Clark his plea was going to be? Did they convey the offer that the state gave? What was the claim that defense counsel made as to his ineffectiveness? The claim, the counsel, I will say that the attorneys never specifically state, we gave ineffective assistance of counsel. No, they didn't. The court denied the defendant's motion to reconsider. It was the state that made the motion concerning, uh, the ineffective assistance. At no time, am I reading this wrong? At no time, the defense made a motion saying I'm ineffective and therefore, or the defendant per se saying my lawyer is ineffective. The motion to vacate the plea states all over it, the defendant intended to enter an open plea. And it says we stood silently by as we allowed our client to enter a motion, enter a plea that he didn't intend. And it says we didn't, it says in paragraph eight that Mr. Clark had not been apprised of a negotiated plea until that moment when the judge admonished him. Reading between the lines, I will concede this motion does not directly state that. However, there is no way as the prosecution acknowledged and recognized below, there's no way to fully litigate this motion without getting into ineffective assistance of counsel. How does, uh, what you've just related establish any prejudice? Well, at this stage, we do not need to allege, we don't need to establish prejudice because this is a conflict, a conflicted counsel, sixth amendment per se conflict issue. However, well, I'm trying to see not just prejudice. I'm trying to see how this has any effect on what happened. If I work the trial judge and I took a blind plea and there was, as an aside, the state said, by the way, we will agree to a cap of 12 years. I don't see how that would necessarily affect whatever it was that the defendant pled to, except that I would know that the state would not be angry with me if I had sentenced the defendant to less than 12 years. Now, I think what your argument infers or implies is that because the defendant was claiming he filed an open plea, that he therefore could file a motion for reconsideration without having to withdraw his plea. Is that the argument that you're making? That is not my argument at all. What is the argument? The argument that I am making is that when he entered, when his plea was, became a negotiated plea in court, um. It became negotiated by the cap. Yes. As opposed to an open plea. Yes. With, with, with an open plea with no cap, he could file a motion to reconsider sentence and seek review of his sentence by both the trial court and higher courts of review and getting back to Justice Shostak's question about the admonishments. When after, um, when, when the court admonished him, the court said, you will not be able to seek review of your sentence in this court. That's what I just asked you. So you said no, at least I thought you said. I'm not arguing that he should get to go back to have his motion to reconsider sentence considered. That's what his trial attorneys asked for in their motion to vacate the plea. Their motion to vacate the plea was more along the lines of we screwed up and we're ineffective, so our client now can't get his sentence reviewed. So can you please just let us file this motion to reconsider sentence and, and treat it like it was an open plea. And that's what I said, which is your, your parent claim of prejudice is that your client could not have the trial court consider or reconsider reducing the sentence. I think we're talking around the same thing. I'm not saying, I'm not asking as relief for him to go back and get to do that. I'm not asking for the same thing that trial attorneys were asking for. The prejudice here is that he was not, he cannot seek review of his sentence. And in the trial court, at the sentencing hearing, defense counsel argued and put on lots of mitigation evidence about, and sought a maximum sentence of eight years and the recommendation of boot camp. By sentencing him to 10 years or anything above the eight years, Mr. Clark, the, the, Mr. Clark is not eligible for boot camp and will spend a far longer time in prison than was anticipated. A full hearing on this may have, um, it had the issues raised here about the fact that counsel had not conveyed the cap to him. We might have had full facts here on this record to determine whether or not Mr. Clark was on an impression by pleading guilty that he was going to get eight years, um, and that he would get boot camp and, or would at least be eligible for boot camp, um, because he was determined to be eligible for boot camp by, um, the, in the PSI that was there. Does it make any difference that the trial judge said that even if I were to consider promotion reconsider, I'd still deny it? I, it makes a difference in that going back, the judge, okay. I think that that, that, that finding has to be viewed in the context in which the judge said at the time, which was based on his knowledge of what was, you know, or I'm sorry, what was before judge Creswell, um, what she knew about the case, had there been a hearing on the motion to vacate the plea and she heard the full information about what was going on off the record, she may have been persuaded otherwise. Even if she wasn't, we could continue, even if he were to go back and have a motion and have the motion to reconsider considered, um, and have it denied, if it was an open plea, he could then have it reviewed by this court or by the Supreme court. Um, so that's the prejudice she suffered. Does it matter whether the attorney in this motion is private or court-appointed? No. Um, there was some question, um, in the state's motion to disqualify, um, the state was asserting that it did not matter because, um, this was a issue of conflict of interest and unless the defendant waives it, it doesn't matter. The, they were arguing it was a per se conflict of interest, but it isn't a per se conflict of interest. I, I think it is a per se conflict of interest. Does the Supreme court set out, um, what the per se conflict of interests would be? In Taylor, the court sets out three categories per se conflicts of interest. The first one is where defense counsel has a contemporaneous association with the victim, the prosecution or an entity assisting the prosecution. Under the facts of this case, defense counsel temporarily represents or defense counsel is former prosecutor involved in the case. Are any of those applicable here? I'm arguing that the first one is applicable. Defense counsel has a prior contemporaneous association with the victim, the prosecution or an entity assisting. Once the defense counsel filed the motion alleging their ineffectiveness, however, obliquely the state recognized that and filed the motion to disqualify. A full hearing on those two motions would require the defense attorneys to become witnesses. And the state would have to call them as witnesses in order to make their case, um, to disqualify them. Once they become witnesses for the state, it's a per se conflict of interest. So under the facts of this case, this is a per se conflict of interest. Doesn't that arise after they're called or knowing for sure that they're going to be called? I mean, this is a little speculative, isn't it? Creative. Well, I don't know how we get into the issue, how we have a full hearing on these issues of outcalling the attorneys. Um, and the problem, the, the, the problem here is that we never got any of the information that would be needed for a full record here, which is, you know, if you grant, crankle applies in a situation where it's a pro se claim of ineffective assistance, but the same goals of crankle apply here. The idea is to create a sufficient record so that this court can review what happened or so that the trial court can fix whatever errors occurred below. Had the court conducted in here, again, stepping into a crankle frame, we don't have to, we have, we don't have to, you know, there's a first step where the judge has to consider whether there's, um, the, um, chance of the compliance case was neglected because defense counsel has stated they neglected the case in admitting they never told him what the cap or, you know, that he didn't know that there was going to be a cap. The state has agreed there was a possible neglect of the case because they filed a motion to disqualify. So this automatically gets us into that under a crankle inquiry, he gets a new attorney to, uh, do the motion to vacate the plea. So if I had raised it himself, he would have gotten a new attorney. He should not be punished because his trial attorneys didn't more fully flesh out their own ineffectiveness in the motion to vacate the plea. Have you found any Illinois cases on point? I think the, this court's decisions in Willis and Williams, which are cited in my briefs, are directly on point. They were both motions to vacate the plea, um, in which the court found it to be a per se conflict of interest. Where the, where the prosecution filed the motion? I can't remember if the, I don't think, you know what, in, um, Willis, the prosecutor at the hearing, the prosecutor objected orally and said the motion to vacate the plea, you know, alleges the council's own ineffectiveness, um, so that creates a conflict of interest. And the court says, do you want to file a motion to disqualify? And we'll set this for a hearing. And defense counsel then said, oh, we'll withdraw that. So there the court found that that effectively required a hearing. Here, essentially the same thing happened. Granted, counsel didn't withdraw the motion. Counsel stood on the motion and said nothing, presented no evidence to support their motion, which only goes to show the prejudice of having these conflicted to vacate the plea because they didn't put on their own testimony about what happened during plea negotiations or the discussions with Mr. Clark. They didn't call Mr. Clark to testify about what he was told or what he understood was happening at the plea. The entire basis for the motion to vacate the plea was that it was an unknowing plea because he didn't know he was entering into a cap and they put on no evidence whatsoever to support that. Had he had a new attorney, he might've had that. Were, is there any evidence that they were aware before that day's hearing of the, of the cap? The trial attorneys? The trial attorneys state in their, uh, it's either in the motion or in their affidavits and support that the state talks about a cap of 12 years if the defendant entered an open plea and that defense counsel believed it was a good faith, which my reading is they thought it was sort of a wink, wink, nudge, nudge. It won't really be a cap. Um, but again, we don't know because there wasn't any evidence put on about what transpired. Um, wouldn't it in your, to his benefit and with the facts of this case to have a cap, what's that? I'm sorry. Wouldn't it in your, to his benefit in a case like this, with the facts of this case to have a cap with, yeah, with the facts of the case. Yes. There's no denying that the facts of this case are tragic. And, um, however, as a defense attorney, a cap just two years under the max isn't that great of a deal. Um, especially where we know that, uh, the attorneys were really arguing for bootcamp and he was found eligible for bootcamp and under the law, he is an eight year sentence. It would have been, um, was it, was the max 14 or 15? The max was 14. 14. On the most serious offense. Um, you keep mentioning crankle hearing. Is it supposed to go back for a crankle hearing? No, this needs to go back for a new, new proceedings on the motion to vacate the plea with conflict-free counsel. Well, the whole theory behind a crankle hearing is, is that what happened before was so cursory that there's no way to determine whether or not, uh, a new attorney should be appointed or not. And based upon this record, how is it apparent that the lawyer has a conflict of interest because the lawyers have admitted that they didn't convey a plea offer to the defendant. And the state has stated in their sworn motion that they made this offer during plea negotiations. And defense counsel has stated in their sworn motions that they didn't tell the defendant what that offer was, or they did not convey what a cap was to him. And therefore it's an effectiveness? Yes. And isn't it classic? Isn't it elementary that that argument fails unless there's a representation made by the defendant that had that been conveyed to him, he would have taken that uh, offer? Right. And had he had conflict-free counsel, is there anything that suggests in this record that there is an allegation or representation that had he known this, he would have taken it? We have no statement from Mr. support their motion to vacate. Well, Mr. Clark did not state that. No. Did he consult with you? Yes. Did he tell you that he would have changed his mind and would have done something different? Yes. What did he say he would have done different? He said he would not have pled guilty. Had he known he couldn't challenge the sentence. Is that in your brief? No, because it's not on the record. And I can't cite things outside the record in an appellate, in a direct appeal. You could on, if it was a post conviction petition, right? If I had an, yeah, I mean, if he went back for post conviction petition and had an affidavit or testified, yes, but we can avoid that by sending this back for a proper hearing on the motion to vacate the guilty plea with conflict-free counsel, the sixth amendment right to conflict-free counsel was violated in this case. And therefore the case must go back for a new hearing on the motion to vacate the plea in which he has conflict-free counsel. Thank you so much. We'll give you some extra time. Thank you, Mary. Who's the court counsel? Um, Lisa Hoffman from the DuPage County state attorney's office on behalf of the people. Um, I'd like to start, uh, by saying that I do think that, um, counsel's statement very close to the closing of her, of her statements about the fact that there's no record. Um, I do think that that's the answer to this case, which is we don't have a record. We can't go outside the record and the proper place for Mr. Clark's allegations regarding his, in the, the behavior and or performance of counsel belongs in a post-conviction petition, which is the very reason we have post-conviction to address things outside the record. Now she's saying, well, there should have been a hearing based, based upon what do you think, or why do you think there should, it should not have been a hearing? Why do you disagree with her? I mean, you can't have a crankle hearing, could you? We can't have a crankle hearing. Um, number one, the defendant never makes any allegation of the ineffective assistance of counsel. Counsel files a motion to vacate the plea and a motion to reconsider sentence. Those two things were filed simultaneously. The motions are perhaps deliberately oblique, but they are obscure at best. She points to paragraph eight of that motion to vacate the plea. And I will, I will, this is the only thing that she points to. Although the defendant was admonished by the court regarding the cap as part of the negotiated plea, this was never addressed to the defendant prior to the time of the plea and would have affected the voluntary nature of SANE. It does not say by whom it was not discussed. It doesn't say, that certainly is not the defendant standing up and saying, I believe my counsel didn't give me proper advice because they didn't explain to me what this meant. And as an aside, we have a record which clearly shows the trial court being extraordinarily careful about explaining to Mr. Clark, what the ramifications of that cap were. Um, but it was brought up as an aside, like the prosecutor's like, Oh, by the way, it's true that the, that counsel went in and if you look at counsel's, um, there were two, two defense counsel, um, Mr. Donahue's affidavit specifically states, um, he talks about the fact that they had plea negotiations. The record actually reflects, um, numerous indications of the case of being continued, that they were in plea negotiations. I think there's one time in the record when the court, when Mr. Donahue actually, um, says that the state's attorney himself consulted with Mr. Donahue on at nine o'clock the night before. They were obviously having negotiations. Um, and so in Mr. Donahue's affidavit, which is at page two through nine of the common law record, um, I engaged in plea negotiations. Um, I'm paraphrasing, but, um, there were discussions of a blind plea. The state suggested they could cap their recommendation at 12 years, although it was discussed when they were pursued as a necessary condition of a blind plea. It's unclear, quite honestly, it's unclear to me whether or not we, everybody's on the same page about what a blind plea is. The law on negotiated pleas and cap cases and open pleas is a little bit complicated, I guess. I would hope that everybody understood that, but, um, but we never pursued it as a necessary condition of a blind plea. Well, I would say by legal definition, a blind plea wouldn't include a cap, but, and then he says, when the defendant entered his blind plea, which is not what he entered, we purposely never made any mention of a cap until this assistant state's attorney interjected it. I do think it's rather incredulous to believe that there had never been any discussion about the fact that this plea would include a cap taking two years off of the maximum sentence. And that when the state's attorney stood up and said, oh, and by the way, this is not an open plea, it includes a cap, that nobody would have, that counsel wouldn't have said, oh no, we don't, that's not true. I mean, obviously that was the agreement that was entered into as counsel's affidavit suggests, he didn't mention it, I don't know why, and he didn't say anything in the trial court, I don't know why. I don't know whether he spoke to his client about it or not. None of us does. And the trial court certainly didn't know that day and didn't have any allegation in front of it to suggest that was the case. The motion did not suggest ineffectiveness. It doesn't say ineffectiveness anywhere. And, um, What prompted the prosecution to file a motion to disqualify? I am unable to answer that. I did not personally file a motion. I believe that perhaps it was an abundance of caution. If this, if, if this is what you're saying, then there might be issues. And I think, um, again, it's always going to be conjecture if I suggest what I think it could have been, but perhaps just a concern for trying to make sure that what, that, that we don't have to go back and undo this, if in fact there are problems, but as the motion itself suggests, they don't, I mean, when we filed the motion, we said, we don't really know what you're alleging, if you were alleging this, then maybe there might be a problem. And why wouldn't warrant hearing? Well, I think it doesn't warrant hearing because as the trial court properly concluded, that's not, there's nothing in the motion that says that nothing in the evidence to say that the defendant didn't stand up in court and say, your honor, I, I didn't understand what happened. And I, that's not what I wanted. And I will say, we have another wrinkle, which is that counsel was retained by the defendant. I'm not, the one thing that nobody's, that the counsel doesn't, didn't address at all in her brief or in argument is what, by what means is this going to be facilitated? So if a counsel defendant files a motion and we have, and like using this motion as an example, a motion that does not allege ineffectiveness that, I mean, you know, my argument would be, you wouldn't even have to obscurely suggest ineffectiveness. You know, any motion that's filed because it's counseled and because there could be issues theoretically in, in, in traversing that might implicate ineffectiveness that every time a counsel represents somebody at trial and then in post-trial motions, the trial court has some sort of sua sponte responsibility to stop and say, all right, now let's think about this. Might there be any ineffectiveness? Let's, should we have a hearing? That's not even what Crankle would suggest. But that would be the court raising it sua sponte. The court didn't raise it here. Your office raised it. Well, our office did raise that perhaps this is what the motion says. And the trial and, and trial counsel, we, I, I guess we offered the ability for everybody to air and nobody took us up on it. I, I, I mean, it's, what's your response to the claim that there should have been a Crankle hearing or something like it? I think there can't, there would never have been a Crankle hearing in this situation. There wasn't even reason for a Crankle inquiry and it's not a pro se situation. It's a counseled situation. I think I addressed in my brief some case law regarding the, the question of how does Crank, you know, how does that whole idea of whether the whole idea of Crankle works in a retained counsel situation. And I think even suggesting that you had an actual allegation by a defendant, either by himself or by counsel, that there was ineffectiveness in a, it's unclear what happened. I mean, certainly I suppose counsel, if there was actually some allegation of effectiveness or defendants express some concern, the court could give coun, could give the defendant time to retain other counsel, time to suggest that he, that he was eligible for a point. I don't, but that's not this case in any event. Correct. And that's my point is there wasn't any of that until your office brought it up. And so once your office brought it to the forefront, should there have been a hearing? That's the question. And my answer is no, because the court considered the motion and based on what the court had in front of it as the motion to vacate, properly determined that there was no reason to disqualify, there were no allegations alleging anything that would disqualify counsel. How, how can your office argue in the trial court that there's a potential conflict? It implicates ineffective assistance of counsel because counsel would likely be called to testify as a witness. And then on appeal argue, no, there's no conflict, there's no ineffective assistance of counsel. And this is all by the by. First of all, I think that again, the motion to disqualify counsel, I, I, I think I may have used the term, I don't know if I use the term preemptory or abundance of caution, whatever, but I do think that the motion couched in turn was couched in terms of if someone's reading this, this way, or someone means this, then this might be a problem. And at that time, the court said, all right, do you have anything more to say? Our assistant state attorney said, I, I stand on the motion. I think he explained a few little issues about what it would and would not apply to. And defense counsel and defendant stood silent. Obviously they didn't see fit to say, oh yes, these things are what we're alleging. So yes, we need to move forward. I don't think there needed to be any further inquiry. I'm not sure what the further inquiry would have been when the opportunity was presented for defendant and or defense counsel to say, oh yes, what we meant was we were ineffective and you know, we didn't tell our client or the defendant could say, yes, I never knew this. I didn't understand. And the defendant didn't request new counsel. No, never, ever. No words requesting counsel from on the record. And again, I don't know. I mean, I, I, I think our records suggest that there was nothing ineffective here. But if there's something that we don't have on this record, the proper place for Mr. Clark to make that allegation is in a first conviction petition. And he certainly has time and ability to do that should that be the case. So I mean, I think the idea I do want to be clear that there's a remedy available should there have been something that we don't know of. But the suggestion that the trial court in a situation like this has some obligation on this record to have stopped and said, all right, let's have a hearing when that's not even what would be required in a crankle situation. And counsel has maintained, and I think properly so, that this isn't a crankle situation. And of course, the prejudice, you know, the record is replete with, as I think I said when I started, that he was properly admonished. The court explained the situation. The defendant said that he understood admonishments are to the defendant. And there doesn't seem to be anything to counter that in this record. And I guess if there are no further questions, we would ask you to be affirmed. Thank you so much, Ms. Montgomery, you can step back up. There is an abundance of case law that says that a trial court is required and has a duty to inquire further when the court is made aware of a possible conflict of interest by defense counsel. For instance, in Mickens v. Taylor, the U.S. Supreme Court clarified that in construing an earlier case to require inquiry only when the trial court knows or reasonably should know that a particular conflict exists, which is not to be confused with when the trial court is aware of a vague, unspecified possibility of conflict, such as that which inheres in almost every instance of multiple representation. So the argument here, apparently from the state, would be that there was not, the trial court should not have reasonably known that conflict existed because it wasn't borne out by the motion and your client and the defense attorneys stood silent. So how would the court know that they reasonably better have adhered? How could they not know when the state files a motion to disqualify counsel on the basis of a per se conflict of interest in which the state says a hearing on this motion, referring to the motion to vacate the plea, will involve further inquiry into his attorney's activities in the course of the representation, such as whether counsel stood mute as defendant accepted a negotiated plea, knowing he did not want to accept it, allowed three months to pass, and the case to proceed to sentencing without telling the court or people the defendant's mistaken plea, withheld the people's offer of a 12-year cap to the defendant, or misinformed defendant regarding the consequences of his negotiated plea. While the purpose of such inquiries would not be to question the trial counsel's effectiveness, the issues are inherently intertwined. The court earlier in their motion, in paragraph nine of the state's motion to disqualify defense counsel, they state, examination of defendant's claims at the time of the representation. Second, if the court grants the defendant a hearing on his motion to vacate, which of course there's going to be a hearing on the motion to vacate the plea, trial counsel will likely be called to testify as witnesses regarding their communications. There's no way anyone could look at what was filed here and not say that the court was apprised of the possibility of a conflict of interest. So then if we, if, if, as Justice Spence said, if we get to that point, that's when the issue, it becomes right as to whether or not there is a conflict. Correct? If we never get there, then that's not an issue. And we're not there yet at the time the state files this motion. I accept that when defense counsel filed their motion to vacate the plea, admitting that they had not advised their client about the cap and filed the affidavits in support of that, stating that they had engaged in conversations where they were told about a cap, but didn't tell their client about it, that brings up ineffective assistance of counsel. A reason, any reasonable trial judge reading that is going to say, you didn't tell your client about the cap, you didn't convey an offer, that's ineffectiveness. And under Mickens and under Illinois Supreme Court case people v. Thomas, which says when facts presenting an attorney's possible conflict of the extent of the risk and would take whatever measures are necessary to protect the accused guarantee of the effective assistance of counsel, the effective assistance of counsel requires conflict-free counsel. As to the allegation or the state's argument that the only thing I pointed to in my brief that states that counsel alleged their own ineffectiveness, it's not just and repeatedly refers to the defendant's desire to enter an open plea, the desire to enter a blind plea, that he wanted a blind plea, the state agrees in their motions that that's what the defendant wanted. To turn around now and say that the defendant didn't want a blind plea because he didn't explicitly state he wanted a blind plea, he only said he wanted a blind plea is bobbling. And turning it to the questions about the admonishments of the court, at the time and counsel's comments about not being sure that anybody knew what was the cap, what, you know, what was a cap and what wasn't, the court admonished the defendant at the time he entered the plea that the, that a cap would mean that he could not challenge his sentence in the trial court. They then go on after sentencing, the court admonishes him, um, correctly that he could not file or that he had to file a motion to withdraw the plea within 30 days. Immediately the next breath, may I finish my point? Yeah, sure. In the next breath, defense counsel is asking the court, is telling the court, we, we will be filing a motion to reconsider the sentence. Uh, let's set a date for that. The court then engages with defense counsel and everybody is talking about setting a time for the hearing on the motion to reconsider sentence. So based on that, it's how can anybody believe that Mr. Clark understood that he did not have the opportunity to appeal a sentence when he's just heard, he can't file a motion to withdraw the reconsider sentence, but his attorney is asking for a hearing on a motion to reconsider sentence. Um, and the last, the very last point I want to make is that I am not suggesting, and I have not suggested that there should be a crankled hearing. Not at all. Um, I am not suggesting this goes back for a hearing to determine whether or not there was a conflict of interest or whether we have admissions from the state here and admissions from defense counsel sufficient to show that this was a conflict of interest. So what are you asking? I am asking for this case to go back for a new, for, to vacate the, um, denial of the motion to vacate, to withdraw the plea, remand the cause for new proceedings on a motion to vacate, to motion to withdraw the plea with conflict-free counsel. And is this going to be an appointed or retained counsel? At the time, uh, when the office of the state appellate defender was appointed because the court, uh, apparently made a finding of indigency. Um, they did discuss this at the end of the very end of the record. Um, defense counsel asked for my office to be appointed and the judge and the state said, well, he wasn't indigent before. And the judge said, well, he's unemployed and prison and going to prison. So he's indigent. Am I to understand that your argument logically would result in a situation where an attorney seeks to withdraw or vacate a plea on the basis that he or she screwed up or did something wrong in this instance, failed to communicate, uh, some sort of an agreement that that lawyer should move to withdraw on the basis and then set forth the reason in the motion to withdraw as to the motion to vacate based upon the fact that he failed to communicate, et cetera. And then after the trial court grants the motion to withdraw, they then appoint an attorney who then comes in who doesn't know, but who will call this newly withdrawn attorney as a witness. Is that the process that you were, uh, foreseen as the appropriate procedure? That's what the case law says. The case law says that when an attorney realized when it says that when an attorney realizes that they've been ineffective, they should move to withdraw. Um, and that's not what happened here. The attorney filed a motion. And then if the trial court asked the defendant, if he waives this conflict and would allow this attorney to go forward on the motion, that that would be acceptable. Yes. I have no other questions. Thank you very much. Thank you very much for your arguments. Um, we will take this case under consideration, find a decision in due course court is adjourned for the day. Thank you so much.